**DINN HOCHMAN & POTTER, LLC**

5910 Landerbrook Drive
Suite 200
Cleveland, OH 44124
440 • 446 • 1100
440 • 446 • 1240 (FAX)
dhp@dhplaw.com (E-Mail)
www.dhplaw.com

ATTORNEYS



Writer's Direct Dial
(440) 544-1119
rmcintyre@dhplaw.com

September 10, 2018

Barbara Langhenry, Director of Law
City of Cleveland
601 Lakeside Avenue
Cleveland, Ohio 44114

Re: MLO Property Trust and City of Cleveland

Dear Ms Langhenry:

I represent the MLO Property Trust which owns about 3.6 acres of land at the northeasterly intersection of Carnegie and Ontario. (See Exhibit A - Parcel Numbers; and GIS Image). During the several reconstructions/reconfigurations of the Lorain-Carnegie intersections, a number of changes have occurred which have materially impacted the MLO property, as follows:

(i) Initially, for the construction of the Gund Arena and Jacobs Field, after acquiring and demolishing virtually all of the old "Central Market" area, what remained was what is now designated as "Ontario" (previously known as "Broadway"), and the then existing 'old' Ontario, which was situated between the MLO property and a triangular parcel of privately owned land occupied by a Shell station. (See Exhibit B - GIS image *as marked*).

(ii) In a subsequent reconstruction/reconfiguration of the Lorain-Carnegie-Broadway-Ontario intersection by the City and ODOT, ODOT acquired the triangular 'Shell station' parcel, and by means and methods that we cannot determine, that part of old Ontario between Eagle and Carnegie was closed and a City Park was installed on the land.

In summary, what we have initially determined is that:

(i) ODOT did acquire the "Shell station" triangle, which fronts present Ontario, and previously also fronted on old Ontario, but it did not acquire any part of old Ontario in that taking. ODOT did not take or otherwise acquire any part of old Ontario.

**EXHIBIT "B"**

**DINN**
**HOCHMAN**
**&**
**POTTER, LLC**
**ATTORNEYS**

September 10, 2018
Page 2

(ii) The City, similarly, did not acquire any part of old Ontario by eminent domain.

(iii) The City did not, by Ordinance, vacate/abandon any part of old Ontario.

(iv) The Common Pleas records do not show any taking by the City, and the City record and the City Engineer's records do not show any vacation of old Ontario by ordinance.

(v) MLO has not received any notice ordinarily required of adjacent property owners to vacate Ontario, nor any notice of any taking proceedings in Common Pleas Court; noting that MLO has had the same address for all of the relevant years in the Rockefeller building.

This leaves MLO in a very unusual relationship with the City because, while MLO is not in any manner suggesting confrontation, the following are some of the more obvious issues/outcomes that might occur in this very unusual situation:

(i) If the City can show that through some presently unknown means/methods that old Ontario has been vacated, then the existing City Park would be de facto unlawfully located in its westerly parts on the land (the westerly 1/2 of the entire old Ontario right of way) that would have devolved to MLO in such a street vacation.

(ii) If the City cannot show how it came into possession of the property containing the Park, then it is possibly unlawfully encroaching on/occupying MLO's property, as well as old Ontario.

(iii) If the City simply 're-purposed' old Ontario without legally vacating it, the Park is now occupying old Ontario and of course, the MLO property.

(iv) In addition, by installing the Park on old Ontario, all of MLO's access to Carnegie and present Ontario via its property fronting on old Ontario has been eliminated, which has materially and adversely impacted MLO's ability and rights for future use and development.

Notably, this unusual situation has recently required attention by MLO due to a (resolved) situation with ODOT regarding a potential construction easement for the planned repair of the Lorain-Carnegie bridge, and multiple development inquiries driven by the sustained growth in the CBD.