# DINN HOCHMAN & POTTER, LLC

5910 Landerbrook Drive
Suite 200
Cleveland, OH 44124
440 • 446 • 1100
440 • 446 • 1240 (FAX)
dhp@dhplaw.com (E-Mail)
www.dhplaw.com

ATTORNEYS

Writer's Direct Dial
(440) 544-1119
rmcintyre@dhplaw.com

December 4, 2018

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AND REGULAR U.S. MAIL**
Barbara Langhenry, Director of Law
City of Cleveland
601 Lakeside Avenue
Cleveland, Ohio 44114

Re: "Old" Ontario and MLO Property Trust

Dear Ms. Langhenry:

  I have provided the City of Cleveland a request for records pursuant to O.R.C. §149.43 which was delivered not only to the City, but indeed, directly to your attention by certified mail. (See: Exhibit A, Letter of November 13, 2018).

  The request specifically identified a universe of records regarding the apparent 'conversion' of the old/former westerly spur of Ontario Street from a public street, to some sort of City park/green space. Obviously, the subject matter of the request could not be a surprise to the City, as I have not only sent prior communications, but have spoken to your colleague, Richard Bertovich, about the situation. (See: Exhibit B, prior correspondence and emails).

  To date, the City has not responded to the O.R.C. §149.43 request by either agreeing to make all or part of the records sought in the §149.43 request available as required by the Ohio Revised Code, or objected in any manner to the request. Notably, the foregoing specifically stated that the City was requested to respond as to any issues of burden within ten (10) days, and thirty (30) days as the outside deadline for any response.

  As noted in the letter of November 13, 2018, the ten (10) day deadline for any initial objections or other responses has passed; the thirty (30) day deadline will be next Thursday,

**EXHIBIT "F"**

December 13, 2018. Therefore, it appears that the City has waived the date to object as to burden and is obligated to fulfill the request by December 13, 2018.

In the interim, the Ohio Department of Transportation ("ODOT") has responded to a similar request, and within its very complete and comprehensive response, there is no record of any interaction with the City with regard to any disposition or modification of the 'old' Ontario right of way. In fact, ODOT records are entirely consistent with the County records, both of which demonstrate that ODOT acquired, by eminent domain, solely and exclusively, fee simple title to the three parcels abutting the easterly ROW of old Ontario. And, therefore ODOT was not in any manner involved in the 'conversion' by the City of the Old Ontario ROW into the present park/green space.

In summary:

1. The City has not responded nor objected to the O.R.C. §149.43 request.

2. The City and County records presently confirm that the City cannot demonstrate that it followed appropriate legal processes and procedures to vacate old Ontario.

3. There are no records, other than what the City may have but has declined to produce, that demonstrate any action or authority that permits the 'conversion' of the subject ROW from a public street to its present 'use' and, therefore, depriving my client of its access to the 'old' Ontario ROW.

In addition, based on the values agreed upon in the eminent domain case involving the three properties obtained by ODOT, the Court Order in that matter established a value of $110.00 per square foot. This could mean that the City's de facto taking of my client's right to one-half (1/2) of the 'vacated' ROW has damaged it in an amount between $900,000.00 and $1,100,000.00. Note as well that this does *not* include the damage to the residual which could easily exceed $3,000,000.00.

Simply put, there are three alternative situations that are presently apparent:

1. If the City has not lawfully vacated 'old' Ontario, then it is obligated to restore the street in the recorded ROW as promptly as practical at the City's sole cost and expense.



2. If the City contends that its actions somehow are a substitute for the vacation processes under the ORC and the City's Ordinances, then an unlawful de facto vacation has occurred and the City must cause the westerly one-half (1/2) of the 'vacated' ROW to be conveyed to my client, and any City improvements/alterations removed as soon as practical.

3. If the City is unwilling to convey the above property to my client or restore the street, such constitutes an unlawful taking and my client is entitled to adequate compensation for not only the loss of the unlawfully taken part of the ROW, but for damages to the residual property arising out of the extinguishment of access to 'old' Ontario, which are described and supported as set forth above.

In closing, whether the City will continue to decline to respond to the outstanding O.R.C. §149.43 request or not, this problem will not go away or solve itself, and there will be litigation at the state and federal level.

Therefore, as one last chance before commencing litigation in which MLO will seek to have the Ontario ROW fully restored at the City's sole cost and expense, and/or compensation for the unlawful taking which could be over $4,000,000.00, plus fees and costs, we are ready and willing to sit down with the City and informally discuss the situation.

Please be advised, if the City will not respond, which appears to be the path chosen to date, my client's options are very limited and if taken, will not easily be reversed.

Your most prompt response is requested.

Very truly yours,

Robert W. McIntyre